UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Estate of Judah Herzel Henkin : <br> By and through : <br> Anne Chana Henkin : <br> 1 Nurok Street : <br> Jerusalem, 96109 Israel : <br> : <br> and : <br> : <br> Anne Chana Henkin : <br> 1 Nurok Street : <br> Jerusalem, 96109 Israel : <br> : <br> and : <br> : <br> Aderet Rivkah Henkin : <br> Tirosh 556/17 : <br> Jerusalem, 96357 Israel : <br> : <br> and : <br> : <br> Eliashir Elijah Henkin : <br> Kiryat Moshe 15 : <br> Jerusalem 9610219 Israel : <br> : <br> and : <br> : <br> Jacob Bechor-Shalom Henkin : <br> 1 Nurok Street : <br> Jerusalem, 96109 Israel : <br> : <br> and : <br> : <br> Joseph Gil Henkin : <br> Carmel 20 : <br> Elkana, 44814, Israel : <br> : <br> and : <br> : <br> Taama Freida Henkin Yaakovson : <br> P.O. Box 158 : <br> Mitzpe Yericho, 90651 : <br> : <br>       Plaintiffs : <br> : <br>    v. : <br> : | Civil Action No. _____ |

1

| | |
|---|---|
| Bank Saderat Iran<br>43 Somayeh Ave.,<br>P.O. Box 15745-631<br>Tehran, Iran<br><br>and<br><br>Bank Melli Iran<br>Ferdowsi Avenue<br>10 Building<br>P.O. Box 11365-144<br>Tehran, Iran<br><br>and<br><br>Bank Markazi Jomhouri Islamic Iran<br>a/k/a Central Bank of the Islamic Republic of Iran<br>No 198, Mirdamad Boulevard<br>Tehran, Iran<br><br>                              Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

# **COMPLAINT**

1.     This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and/or, as appropriate, as the legal heirs thereof, and/or for the benefit and on behalf of all those legally entitled to assert a claim under the Foreign Sovereign Immunities Act 28 U.S.C. § 1605A(c) against Defendants Bank Saderat Iran ("Bank Saderat"), Bank Melli Iran ("Bank Melli") and Bank Markazi Jomhouri Islamic Iran ("Bank Markazi") jointly and severally. This matter is related to, *Rabbi Judah Henkin, et al v. Islamic Republic Of Iran*, 18-cv-01273-RCL ("Henkin I") and *Estate of Eitam Henkin, et al. v. Islamic of Republic of Iran, et al.*, Civil Action No. 19-01184 (RCL) (D.D.C.) ("Henkin II Case"); in that it involves common issues of fact, arises out of the same event and involves Iranian sponsorship of the same terrorist organization, the Islamic Resistance Movement ("HAMAS") which has resulted in the death and injuries of American citizens.[1]

---

[1] On July 12, 2021, the United States District Court for the District of Columbia entered consolidated Findings of Fact and Conclusions of Law in the related cases *Henkin I* and *Henkin II*, wherein the Court found that with regard to this attack which injured the Plaintiffs in this matter, that this attack was committed by members of HAMAS, that

2

## JURISDICTION, VENUE, AND CHOICE OF LAW

2. This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

3. As pleaded below, Bank Melli, Bank Merkazi, and Bank Saderat are agencies and instrumentalities of the Islamic Republic of Iran ("Iran"). Accordingly, these Defendants are considered a foreign state. 28 U.S.C. § 1603.

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District Court for the District of Columbia.

5. Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

## THE PARTIES

### A. The Plaintiffs

6. This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and on behalf of all those legally entitled to assert a claim under the FSIA as the survivors, family members and/or heirs of Eitam Simon Henkin, a United States citizen.

### The Henkin Family

7. Eitam Simon Henkin was murdered on October 1, 2015 by a terrorist attack committed by HAMAS, a Foreign Terrorist Organization. At the time of the acts alleged, and at all other times relevant hereto, Eitam Simon Henkin was a citizen of the United States and at all

---

HAMAS was sponsored and materially supported by the Islamic Republic of Iran, that the Defendants named in this matter are instrumentalities of the Islamic Republic of Iran and materially support HAMAS as alleged herein. *See Henkin I,* 18-cv-1273-RCL, (D.D.C.) Findings of Fact and Conclusions of Law (ECF 29); *Henkin II,* 19-cv-1184 RCL (D.D.C.) Findings of Fact and Conclusions of Law (ECF 61).

times relevant hereto, a victim of "torture" as defined in the TVPA and "personal injury" and "death" as required by 28 U.S.C. § 1605A.

8. Plaintiff Estate of Judah Herzel Henkin is represented in this action by Anne Chana Henkin. Judah Herzel Henkin was, and at all times relevant hereto, the biological father of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Judah Herzel Henkin can sue and be sued in this Court.

9. Plaintiff Anne Chana Henkin was, and at all times relevant hereto, the biological mother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Anne Chana Henkin can sue and be sued in this Court.

10. Plaintiff Aderet Rivkah Henkin Stern was, and at all times relevant hereto, the biological sister of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Aderet Rivkah Henkin Stern can sue and be sued in this Court.

11. Plaintiff Eliashir Elijah Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Eliashir Elijah Henkin can sue and be sued in this Court.

12. Plaintiff Jacob Bechor-Shalom Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Jacob Bechor-Shalom Henkin can sue and be sued in this Court.

13. Plaintiff Joseph Gil Henkin was, and at all times relevant hereto, the biological brother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Joseph Gil Henkin can sue and be sued in this Court.

14. Plaintiff Taama Freida Henkin was, and at all times relevant hereto, the biological mother of Eitam Simon Henkin, and a citizen of the United States. Plaintiff Taama Freida Henkin can sue and be sued in this Court.

**B. The Defendants**

15. Defendant Bank Markazi is Iran's central bank and is wholly owned by the Iranian

government. According to Bank Markazi itself, it is "responsible for the design and implementation of the monetary and credit policies with due regard to the general economic policy of the country." Accordingly, Bank Markazi is an agency or instrumentality of Iran[2].

16. Defendant Bank Melli is Iran's largest commercial bank. It was established in 1927 by order of the Iranian Parliament and has remained a state-owned bank thereafter. Bank Melli describes itself as "a powerful arm of the government.[3]" Bank Melli most notably provides banking services to entities involved in Iran's nuclear and ballistic missile programs, but relevant here, Bank Melli also provides banking and financial services to the IRGC and the Quds Force and is one of Iran's main conduits for funding Hamas. Accordingly, Bank Melli is an agency or instrumentality of Iran[4].

17. Defendant Bank Saderat was established in 1952 and became a commercial state-owned bank of Iran in 1979 after the revolutionary government nationalized the bank. It has approximately 3,200 branch offices, and has been used by the Government of Iran to channel funds to terrorist organizations, including HAMAS. From 2001 to 2006, Bank Saderat transferred $50 million from the Central Bank of Iran, through its subsidiary in London, to its branch in Beirut for the benefit of Hizballah fronts in Lebanon that support acts of violence. Hizballah has used Bank Saderat to send money to other terrorist organizations, including millions of dollars on occasion, to support the activities of HAMAS. Further, as of early 2005, HAMAS had substantial assets deposited in Bank Saderat. On October 25, 2007, the Treasury Department designated Bank Saderat, under E.O. 13224, as a terrorist financier, specifically noting that the reason for the designation was Bank Saderat's provision of financial services to designated terrorist groups

---

[2] *In re Terrorist Attacks on Sept. 11, 2001, 2011* WL 13244047, at *7 (S.D.N.Y. Dec. 22, 2011) ("[T]he Central Bank of the Islamic Republic of Iran [is an] agenc[y] and instrumentalit[y] of the state of Iran. [It] has a legal corporate existence outside the government and core functions which are commercial, not governmental, in nature. [It] is, however, tightly connected to the government of Iran, and [it] is an organ of the government and/or has been owned, directed, and controlled by the Iranian state.").
[3] Bank Melli Iran, *History of Bank Melli Iran*, http://bmi.ir/En/BMIHistory.aspx?smnuid=10011 (last visited Apr.17, 2019).
[4] *Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 954-957 (9th Cir. 2016); *Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 418-19 (S.D.N.Y. 2013).

Hizballah and HAMAS. Although Bank Saderat claims to have been "privatized" in 2009, this Court has since held that Bank Saderat is still an agency or instrumentality of Iran[5].

## STATEMENT OF FACTS[6]

18. Several prominent terrorist organizations operate in the Palestinian territories administered by the State of Israel and/or the Palestinian Authority and located on the West Bank of the Jordan River and in Gaza, the most notable of them all of which is HAMAS. HAMAS' committed widespread terrorist attacks during the First Intifada (1987 - 1993), the Second Intifada (2000 - 2005), before, during and since their violent takeover of the Gaza Strip in June 2007 following Israel's withdrawal from Gaza in 2005-6, and their subsequent and continuing terror attacks upon innocent citizens, residents and civilians living in and visitors to the State of Israel.

19. HAMAS is the Islamic Resistance Movement and is a primarily radical Islamist terrorist organization that is committed to the globalization of Islam through violent "Jihad", which means "holy war".

20. HAMAS is formally committed to the destruction of the State of Israel, is extremely anti-American, rejects achieving a peaceful resolution between Israel and the Palestinians and is committed to achieving its objectives by violent means, including acts of international terrorism.

21. HAMAS is an acronym for "Harakat Muqawama Islamiyya," which was founded in December 1987.

22. The HAMAS political documents calls for an Islamic Palestinian state throughout and in place of Israel by eliminating the State of Israel through violent jihad.

23. HAMAS propaganda, since the September 11, 2001 World Trade Center attacks, has praised and glorified Osama bin Laden and his supporters engaged in global jihad.

24. Through its military wing, Izz ad-Din al-Qassam Brigades, HAMAS commits

---

[5] *Shoham v. Islamic Republic of Iran*, 2017 WL 2399454, at *8 (D.D.C. June 1, 2017) (holding that Bank Saderat is an instrumentality of Iran), *appeal dismissed*, 2019 WL 1270405 (D.C. Cir. Feb. 25, 2019).
[6] *See Henkin I,* 18-cv-1273-RCL, (D.D.C.) Findings of Fact and Conclusions of Law (ECF29); *Henkin II,* 19-cv-1184 RCL (D.D.C.) Findings of Fact and Conclusions of Law (ECF 61)

criminal activity, including murder, attempted murder, solicitation to commit murder, and numerous other acts of international terrorism, as defined by 18 U.S.C. § 1331, in violation of the criminal code of the United States.

25. On January 25, 1995, HAMAS was designated as a Specially Designated Terrorist organization and, on October 8, 1997, by publication in the Federal Register, the United States Secretary of State designated HAMAS as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act as amended by the Antiterrorism and Effective Death Penalty Act of 1996. HAMAS is also designated as a Specially Designated Global Terrorist Organization.

26. HAMAS'S goal is to eliminate the State of Israel and establish in its place an Islamist state in all of what was once British Mandatory Palestine—a territory that today comprises Israel, the West Bank, and the Gaza Strip. Hamas rejects a permanent peace with Israel, which places HAMAS at odds with Israel and the Palestinian Authority.

27. To accomplish its goals, HAMAS engages in activities ranging from social welfare and political activities to militant and terrorist activities.

28. In 2006, HAMAS won the general Palestinian Authority elections, violently expelled the Palestinian Authority from Gaza, and took complete control of the Gaza Strip in 2007. HAMAS continues to maintain absolute political and military control of the Gaza Strip.

29. HAMAS also operates the *da'wu*—a network of proselytizing and fundraising through mosques and social-service institutions.

30. Funds raised through the *da'wa* are sometimes used for peaceful purposes, such as hospitals, schools, mosques, and sports leagues; however, money donated to any portion of HAMAS can free up additional funding for terrorist-related activities.

31. The *da'wa* network also provides a means to identify new HAMAS recruits, particularly through their sports clubs.

32. *Da'wa* also sponsors schools and summer camps that create the opportunity to

instill these radical messages into children starting at a young age.

33. Finally, the well-funded *da'wa* network provides HAMAS members with regular employment so that they can maintain a salary, have an ostensible "cover" for their terrorist activities, and also frees them to focus on furthering HAMAS'S violent ends.

34. HAMAS commits terror attacks through its military wing, the Izz a-Din al-Qassam Brigades.

35. The Izz a-Din al-Qassam Brigades were founded at the start of the 1990s, and currently have more than thirty-thousand terrorists. They are responsible for perpetrating terror attacks for HAMAS and are directly subordinate to top HAMAS leadership.

36. Since its founding, HAMAS has committed countless violent attacks against Israel's military and civilians, including bombings, rocket and mortar attacks, shootings, stabbings, kidnappings and attempted kidnappings, and car-ramming attack

## THE MURDER OF EITAM SIMON HENKIN WAS AN ACT OF INTERNATIONAL TERRORISM

37. On October 1, 2015, Eitam Simon Henkin, an American citizen, his wife and four children were driving past the town of Beit Furik when he and his wife were shot and killed.

38. The death of Eitam Simon Henkin on October 1, 2015 was committed by HAMAS, a Foreign Terrorist Organization, with the material aid and support of the Defendantsia was an act of international terrorism.

39. Eitam Simon Henkin, his wife and four children were driving in their van past the town Beit Furik when the vehicle was overtaken by three assailants, who shot and wounded Eitam Simon Henkin and his wife. After the vehicle was stopped, the assailants came to the car. After a struggle between Eitam Simon Henkin and one of the assailants, he and his wife were shot and killed in front of their children.

40. An investigation revealed that the attack upon Eitam Simon Henkin was carried out by a HAMAS cell. The assailants who planned and conducted the attack were HAMAS operatives

8

Yahia Mihammed Naif Abdullah Hajj Hamad, Samir Zahor Ibrahim Kusah, Karem Lufti Fatahi Razek, Zir Ziad Jamal Amar and Ragheb Ahmad Muhammad Aliwi. Each were arrested and indicted for murder, confessing to the murders and providing details of the attack.

41. Following the attack, on October 2, 2015 HAMAS leader Mushi al-Masri praised the attack as a "heroic operation" and as a "natural response to the crimes of the enemy." On several occasions, including every year on the anniversary of the Attack, HAMAS has taken credit for the Attack and recognized those in the cell that carried out the Attack as members of HAMAS.

42. HAMAS was neither a sovereign entity nor *de facto* government at all times relevant hereto.

### IRAN'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

43. Iran is a foreign state that has supported HAMAS since at least 1984, and though Iran's relationship with HAMAS "has waxed and waned," it has never completely stopped.

44. The U.S. Department of State designated Iran as a state sponsor of terror in 1984 for its support for other terrorist groups, and Iran has been so-designated ever since "State Sponsors of Terrorism," U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism/

45. The U.S. State Department in its Country Reports on Terrorism, and its predecessor report, the Patterns of Global Terrorism, has consistently stated from 2007 through 2018 that Iran provides weapons, training, and funding to HAMAS, and it recognizes that HAMAS has committed attacks in the West Bank.

46. Iran's self-proclaimed goal is to export revolution, eliminate the American military presence in the Middle East, and to end the existence of the State of Israel, and it will support terrorist organizations to accomplish these goals.

47. Iran provided material support to HAMAS for years, including the time leading up to and immediately before the attack against the Henkins.

9

48. Iran provides significant financial support to HAMAS, which has exceeded millions of dollars over the years.

49. Iran utilizes its banking system, especially through Lebanon, to transfer money to HAMAS cells in Gaza.

50. September 2015 media reports claimed that Iran sent suitcases of cash earlier that summer to HAMAS'S military wing in Gaza, which Dr. Clawson describes as "a common method for Iran to provide funds to Hamas."

51. Additionally, Mahir Jawad Yunis Salah, a HAMAS financier who the Treasury Department designated in September 2015 under E.O. 13224, "oversaw the transfer of tens of millions of dollars from Iran, through his office in Saudi Arabia, to fund the Hamas military wing in Gaza."

52. Iran also provides HAMAS with weapons.

53. On March 5, 2014, the Israeli navy intercepted the Klos-C, which was a ship smuggling Iranian- and Syrian-made weapons.31. On March 4, 2008, then-U.S. Secretary of State Condoleezza Rice said, "it is very clear that Hamas is being armed, and it's very clear they are being armed by the Iranians.

54. Iran also provides military training to HAMAS'S members.

### BANK MARKAZI, BANK MEILI AND BANK SEDARAT ARE ALL INTRUMENTALITIES OF IRAN AND MATERIALLY SUPPORT HAMAS

55. Bank Markazi (the Central Bank of Iran or "CBI") is the central bank of Iran. It is the principal regulator of other banks, it issues currency, and it aids the functions of other branches of the Iranian government. All government revenue is supposed to be channeled into Bank Markazi, and the bank raises funding when the government needs to borrow money.

56. Bank Markazi is majority-owned and controlled by the Iranian government. Its core functions are predominantly commercial, rather than governmental.

57.     The Central Bank of Iran is an agency and instrumentality of the state of Iran. It has a legal corporate existence outside the government and core functions which are commercial, not governmental, in nature. It is, however, tightly connected to the government of Iran, and [it] is an organ of the government and/or has been owned, directed, and controlled by the Iranian state.

58.     Bank Markazi provided material support to HAMAS in the time leading up to the October 1, 2015 attack.

59.     Because Bank Markazi operates as the Iranian government's banker, Iran could not have transferred millions of dollars to a foreign terrorist group without the funds passing through Bank Markazi and without Bank Markazi's knowledge and support.

60.     On September 20, 2019, the U.S. Treasury Department designated Bank Markazi under E.O. 13224 as providing material support to Iran. The press release accompanying that designation stated that "OFAC is designating the CBI today for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to, the IRGC-QF [which] has provided material support to numerous terrorist groups, including ... Hamas." The press release further states that "since at least 2016, the IRGC-QF has received the vast majority of its foreign currency from the CBI [Bank Markazi]" and that "we are putting governments on notice that they are risking the integrity of their financial system by continuing to work with the Iranian regime's arm of terror finance, its Central Bank."

61.     Bank Markazi provided material support to HAMAS —in the form of financing— in the years leading up to the October 1, 2015, attack. As a result of this significant financial support, Bank Markazi's degree of integration in HAMAS'S terror policies is high.

62.     Bank Meili's name means "National Bank of Iran," and it is Iran's oldest and largest commercial bank. Bank Meili was founded in 1928, and it was, in effect, Iran's first central bank until 1959, shortly before Bank Markazi (Iran's current central bank) was established. It is a commercial owned bank and it is the largest commercial bank in Iran.

63. It provides more bankng services to the Iranian government then other commercial banks.

64. Because Bank Meili is the country's largest bank, it is particularly subject to orders from the government relating to the allocation of lending, which has limited its ability to make a profit similar to what would be expected from such a large bank.

65. The Iranian government owns and controls the majority of Bank Meili.

66. Bank Meili's functions are predominantly commercial, rather than governmental.

67. Bank Meili supports HAMAS.

68. In 2018, the U.S. Treasury Department designated Bank Meili pursuant to E.O.13224 "for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, the IRGC-QF," announcing that "[a]s of 2018, the equivalent of billions of dollars in funds have flowed through IRGC- QF-controlled accounts at Bank Meili," "Bank Meili has acted as a conduit for payments to the IRGC-QF," and "[t]he IRGC-QF has used Bank Meili to dispense funds to Iraqi Shia militant groups. The same announcement from the Treasury Department stated that "since the mid-2000s, Bank Meili has increasingly provided services to Iranian Military-related entities as they became further involved in all aspects of the Iranian economy.

69. Bank Meili provided material support to HAMAS —in the form of financing— in the years leading up to the October 1, 2015, attack. As a result of this significant financial support, Bank Meili's degree of integration in HAMAS'S terror policies is high.

70. Bank Saderat is a commercial bank that, as of 2013, had approximately 3,200 branches worldwide, and a capital of IRR 57800 billion (USD 4.7 billion).

71. The Iranian government owns and controls the majority of Bank Saderat. 22.7% of Bank Saderaf s shares are directly owned by the government, and the 40% that are "justice shares" are directly controlled by the government, leaving the Iranian government with control over at least 62.7% of Bank Saderat's shares.

72. The Iranian government also appoints the bank managers and "decides their structures and makes all the other key decisions they must respect" with regard to Bank Saderat.

73. Bank Saderat's functions are predominantly commercial, rather than governmental.

74. Bank Saderat provided material support to HAMAS in the time leading up to the October 1, 2015 attack.

75. In October 2007, the Treasury Department designated Bank Saderat specifically for its support for terror financing, and it is still designated today for its support of HAMAS and other terrorist organizations.

76. Additionally, a November 2013 joint report of the European Commission and the U.S. Treasury explained that Bank Saderat has been used by the Government of Iran to channel funds to Hamas.

77. Therefore, as a direct and proximate result of the provision of the material support Bank Markazi, Bank Meili, and Bank Sederat to HAMAS as described herein, hundreds of innocent civilians were killed and grievously injured by acts of terrorism committed by HAMAS. Among the civilians murdered and wounded by HAMAS'S terrorist attacks committed with the material support of these bamls was Eitam Simon Henkin, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages for the heinous act of terrorist murder committed upon the deceased and each of the Plaintiffs, in amounts as shall be proven at the trial of the within action.

**COUNT I**
**28 U.S.C. §1605A(c)**
**(On behalf of All Plaintiffs)**

78. Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

79. As recounted above, the death of Eitam Simon Henkin was caused by a willful and

deliberate act of terror committed by the Foreign Terrorist Organization, HAMAS, with the material aid and support of the Defendants, Bank Markazi, Bank Melli and Bank Saderat, and each of them, who through their agents, financed the attack and rendered material support to the activities of HAMAS that resulted in the death of Eitam Simon Henkin. Those agents were at all times acting with the scope of their agency and acted on the direction of and/or with the material support of the Defendants, Bank Markazi, Bank Melli and Bank Saderat.

80. As a direct and proximate result of the willful, wrongful and intentional act of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, each of the Plaintiffs have endured extreme mental anguish, physical injury, pain and suffering, solatium, and loss of the affection, love and companionship of their loved father, son and brother, Eitam Simon Henkin, for which the Plaintiffs and each of them seek an award of damages and judgment against each of the Defendants, jointly and severally, to the fullest extent of the law.

81. WHEREFORE, each of the Plaintiffs demand that judgment be entered, jointly and severally, against the Defendants, Bank Markazi, Bank Melli and Bank Saderat, and each of them, for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, emotional distress, and solatium in amount to be proven, and for their costs expended, including attorneys' fees, and as otherwise as permitted by this Court.

**COUNT II**
**LOSS OF SOLATIUM**
**28 U.S.C. § 1605A(c)**
**(On behalf of all Plaintiffs)**

82. The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

83. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Defendants, their agents and instrumentalities, each of the Plaintiffs suffered extreme mental anguish, emotional pain and suffering, and the loss of the society and companionship of

14

the victims.

84. Accordingly, each of the Plaintiffs bring claims for loss of solatium against the Defendants pursuant to 28 U.S.C. § 1605A(c).

85. WHEREFORE, each of the Plaintiffs demand that judgment be entered against the Defendants in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

### COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS –
### 28 U.S.C. § 1605A(c)
### (On behalf of all of the Plaintiffs)

86. The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

87. On October 1, 2015, members of HAMAS willfully, violently, and forcefully shot and killed Eitam Simon Henkin.

88. The act of shooting and killing Eitam Simon Henkin constituted extreme and outrageous conduct on the part of HAMAS members, whose acts were materially aided and supported by the Defendants.

89. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of HAMAS members, whose terrorist acts were funded and materially supported by Bank Markazi, Bank Melli and Bank Saderat, Plaintiffs suffered severe emotional distress, entitling them to compensatory damages.

90. Each Plaintiff may assert a cause of action for intentional infliction of emotional distress against the Defendants in connection with the willful, wrongful, intentional, and reckless actions of HAMAS members. Such cause of action may be asserted pursuant to 28 U.S.C. § 1605A(c).

91. WHEREFORE, Plaintiffs demand that judgment be entered against the Defendants

in an amount to be proven for their compensatory damages, and otherwise as permitted by this Court.

**COUNT IV**
**PUNITIVE DAMAGES**
**28 U.S.C. § 1605A(c)**
**(On behalf of all Plaintiffs)**

92. The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

93. The actions of the Bank Markazi, Bank Melli and Bank Saderat, who have been sponsoring, and materially supporting acts of international terror against Americans are heinous in nature, politically motivated, and target the United States of America and the State of Israel, its citizens, residents and visitors, render both Defendants, jointly and severally, liable for the heinous murder of Eitam Simon Henkin, thereby entitling each of the Plaintiffs being his family members, to an award of damages in accordance with the laws of the United States.

94. The acts of the Defendants, and each of them, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life as above described was intended as a result by each Defendant. The family members of Eitam Simon Henkin are each victims of the acts of international terror committed by HAMAS with the material support of each of the Defendants. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C §1605A(c) the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

95. The actions of HAMAS, as set forth hereinabove, were intentional and malicious and in willful, wanton, and reckless disregard of the Eitam Simon Henkin's rights and physical well-being. The actions of HAMAS were part of its ongoing and continuing campaign of terror committed against citizens of the United States of America and the State of Israel in support of the

political goals and aims of HAMAS to reject peace with Israel, to oppose US foreign policy in the region, and to use terror as a means of destroying the State of Israel.,. The acts of HAMAS were facilitated through funding, training, and material support by the Bank Markazi, Bank Melli and Bank Saderat. In accordance with 28 U.S.C § 1605A(c) the Defendants, the Bank Markazi, Bank Melli and Bank Saderat, and each of them, are therefore liable for the actions of HAMAS, the Foreign Terrorist Organization and its members. In providing such funding, material support, direction, and training, Bank Markazi, Bank Melli and Bank Saderat were acting within the scope of its agencies as an instrumentality. Said agencies rendered material support to those actually carrying out the act above described.

96. This Court has previously found the Defendants liable for the support of HAMAS. Notwithstanding said findings, the Defendants Bank Markazi, Bank Melli and Bank Saderat have continued to this day to sponsor and support terror. The Defendants, and each of them, must be punished by this Court for their continuing acts of sponsorship of terror. The Defendants, and each of them, must be held out as an example to the world that this Court will not countenance acts of terror, nor those who materially support and fund terror. A maximal award of punitive damages is requested as against all Defendants, jointly and severally, in accordance with the provisions of 28 U.S.C. §1605A(c), each of which are liable for punitive damages.

97. WHEREFORE, the Plaintiffs pray that judgment be entered, jointly and severally, against the Bank Markazi, Bank Melli and Bank Saderat, on behalf of each Plaintiff, in the amount to be determined by the Court for each of them, as against each of the Defendants, jointly and severally, and their costs herein expended.

## **PRAYER FOR RELIEF**

98. WHEREFORE, Plaintiffs, request this Court find the Defendants, and each of them liable for the acts alleged herein and enter joint and several Judgment against the Defendants as follows:

a. Awarding Plaintiffs compensatory damages against Defendants Bank Markazi, Bank Melli and Bank Saderat, jointly and severally, in amounts set forth herein and as shall be determined in accordance with evidence to be submitted to this Court;

b. Awarding Plaintiffs solatium damages against the Defendants, jointly and severally, in amounts set forth herein and as shall be determined in accordance with evidence to be submitted to this Court;

c. Awarding Plaintiffs punitive or exemplary damages against Defendants Bank Markazi, Bank Melli and Bank Saderat , jointly and severally, in amount to be determined as punishment for their continued support for and sponsorship of acts of terror against Americans ;

d. Awarding Plaintiffs prejudgment interest and post judgment interest as computed and calculated at the maximum rate allowable by law;

e. Awarding Plaintiffs their costs and disbursements and reasonable allowances of reasonable fees for Plaintiffs counsel and experts and reimbursement of expenses;

f. Leave to amend this Complaint as the interests of justice may allow; and

g. Granting any and all such further relief as the Court may deem just and proper.

Dated: September 3, 2021          Respectfully submitted,

HEIDEMAN NUDELMAN & KALIK, PC
5335 Wisconsin Ave. Suite 440
Washington, DC 20015
Telephone:    202-463-1818
Telefax:      202-463-2999

By:     /s/ Richard D. Heideman
        Richard D. Heideman (No. 377462)
        Noel J. Nudelman (No. 449969)
        Tracy Reichman Kalik (No. 462055)
        Joseph H. Tipograph (No. 997533)

*Counsel for all Plaintiffs*